UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TINA L. MCCONNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-CV-376-DCP |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Tina L. McConnell ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On March 10, 2015, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability beginning on February 21, 2015. [Tr. 15, 253–55]. After her application was denied initially and upon

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 171]. A hearing was held on February 28, 2017. [Tr. 39–68]. On September 8, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 134–46]. However, the Appeals Council remanded the case on November 28, 2017. [Tr. 144–46]. A second hearing before the ALJ was conducted on April 3, 2018. [Tr. 69–100]. The ALJ thereafter rendered an unfavorable decision on May 4, 2018, finding that Plaintiff was not disabled. [Tr. 15–31]. The Appeals Council denied Plaintiff's Request for Review on July 10, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on September 11, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

In his May 4, 2018 disability decision, ALJ James Dixon made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2016.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 21, 2015 though her date late insured of December 31, 2016 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative joint disease in the left shoulder, fibromyalgia, post-traumatic stress disorder, anxiety, depression, and unspecified personality disorder with avoidant and dependent traits (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). The claimant could lift and carry 50 pounds occasionally and 25 pounds frequently. She could stand, walk, and sit about six hours each in an eight-hour day. She had unlimited ability for pushing and pulling within exertional limitations and there were no postural limitations. She could occasionally reach overhead with the left upper extremity. All other manipulative activities were unlimited. There were no visual or communicative limitations. She must avoid concentrated exposure to noise. The claimant would be able to maintain attention and concentration for two (2) hours at a time, as required for the performance of simple tasks. She could tolerate occasional social interactions. She would be able to adapt to occasional routine changes and respond to directions from others within the previously described restrictions.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 6, 1972 and was 44 years old, defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 21, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

[Tr. 17–31].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in two regards. Plaintiff claims that the ALJ failed to afford appropriate weight to the opinion of consultative psychologist, Dr. Maureen Bibby, Ph.D., as well as the opinion of her treating counselor, Suzi Miller, LPC-MHSP. [Doc. 14 at 16–25]. The Court will address Plaintiff's specific allegations of error in turn.

### A. ALJ's Treatment of Dr. Bibby's Opinion

Plaintiff claims that the ALJ improperly assigned little weight to the opinion of consultative psychologist, Dr. Bibby. Dr. Bibby first performed a Compensation and Pension ("C & P") examination of Plaintiff on June 11, 2015, as a part of her application for disability through the U.S. Department of Veterans Affairs ("VA"). [Tr. 717]. Dr. Bibby found that Plaintiff's post-traumatic stress disorder ("PTSD") conformed to the criteria set forth in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013). [*Id.*]. Ultimately, Dr. Bibby diagnosed PTSD and other specified personality disorder, mixed personality features. [Tr. 717–18]. Plaintiff's primary stressor was noted to be related to sexual abuse while

6

being stationed in Alaska and locked outdoors naked in negative 40-degree weather allegedly "as a threatening statement about what would happen to her" if she disclosed the abuse by a supervisor. [Tr. 723–26, 29–30].

Dr. Bibby administered a Personality Assessment Inventory ("PAI"), which indicated "highly valid responses with indicators of attentiveness," but also that Plaintiff's "response pattern shows some defensiveness about some personal shortcomings as well as tendency to endorse items rendering a negative impression by elevated Negative Impression Management Scale." [Tr. 735]. Therefore, Dr. Bibby detailed that the PAI indicated marked distress and concerns about physical functioning, rendering Plaintiff unhappy with little energy and enthusiasm. [*Id.*]. Lastly, Dr. Bibby noted that Plaintiff presented with a pleasant and cooperative demeanor, was alert and fully-oriented, and presented average to above-average intellectual functioning and verbal skills. [Tr. 733]. In reviewing this examination, the ALJ noted that while Plaintiff was diagnosed with PTSD, and occupational deficits were noted, they did not preclude the performance of all work activities. [Tr. 25].

On August 10, 2017, Dr. Bibby then performed another examination "for competency determination purposes per CFR 38 § 3.353," in order to evaluate whether Plaintiff was competent to handle her VA disability benefits, and delivered an opinion on Plaintiff's mental impairments. [Tr. 1029–43]. Dr. Bibby noted that she "was asked to comment on how [Plaintiff's] PTSD affects her ability to obtain and maintain gainful employment in both physical and sedimentary environments and function in an occupational setting." [Tr. 1042]. Dr. Bibby stated that it was not possible to separate the effects of each of Plaintiff's diagnoses of PTSD and Other Specified Personality Disorder on her employability "without resorting to mere speculation, because these have been co-occurring for so long." [*Id.*].

7

However, Dr. Bibby opined that Plaintiff's ability to understand and follow instructions was unimpaired due to her presentation on the day of the examination, including cogent and on-task responses to all questions. [Tr. 1043]. Additionally, Dr. Bibby found that Plaintiff's ability to retain instructions, sustain concentration to perform simple tasks, and sustain concentration to task persistence and pace were mildly to moderately impaired due to her self-report of a lack of retention for recently read material and difficulty maintaining focus for reading. [*Id.*]. Dr. Bibby found that Plaintiff's ability to respond appropriately to coworkers, supervisors, and the general public was severely impaired due to her "self-report and treatment records reflecting aberrant responses to encounters with males." [*Id.*]. Dr. Bibby noted that Plaintiff would either avoid these encounters entirely by not leaving her home or would seek an extramarital affair with men, as well as that Plaintiff's treatment records indicated severe anxiety about leaving the safety of her home. [*Id.*]. Lastly, Dr. Bibby opined that Plaintiff's ability to respond appropriately to changes in the work setting was severely impaired due to "her retreat under a blanket to the unexpected arrival of a visitor to the home," and that she would "retreat to the confines of her home and not leave unless her spouse insists that she accompany him." [*Id.*].

The ALJ reviewed Dr. Bibby's August 2017 opinion in the disability decision, and assigned some weight to the assessed limitations "regarding concentration, persistence, and pace as well as understanding and remembering instructions" because Dr. Bibby was able to observe and personally examine Plaintiff. [Tr. 29]. However, the ALJ afforded little weight to the "social and adaption limitations" in the opinion because they were not consistent with the longitudinal record, and Dr. Bibby "issued this opinion a significant time after the date last insured." [*Id.*]. The ALJ noted that Plaintiff alleged disability primarily due to her PTSD from her time in the military, migraines, depression, and anxiety. [Tr. 21].

8

Plaintiff challenges the ALJ's assignment of little weight to portions of Dr. Bibby's opinion, claiming that Dr. Bibby's opinion was supported by the results of her June 12, 2015 and August 10, 2017 examinations. [Doc. 14 at 18–19]. Additionally, Plaintiff asserts that the medical record supports the limitations identified in Dr. Bibby's opinion. [*Id.* at 19]. Therefore, Plaintiff claims that the ALJ failed to afford appropriate weight to Dr. Bibby's opinion, as she had the opportunity to examine Plaintiff on two occasions, thoroughly documented and supported the opinion with examination notes and was a specialist in her field, and that the opinion was "consistent with [the] evidence of record including Plaintiff's subjective complaints and the examination findings of other providers." [*Id.* at 20].

Plaintiff does not argue that Dr. Bibby was a treating physician, and the record reflects that Dr. Bibby examined Plaintiff twice for various purposes regarding her VA disability. *See, e.g., Cooter v. Colvin*, No. 3:14-CV-532-TAV-HBG, 2015 WL 9700965, at *5 (E.D. Tenn. Oct. 28, 2015) ("Therefore at best, Dr. Brown was a non-treating, examining source who met with the Plaintiff on a one-time basis for the purpose of completing the VA Disability Benefits Questionnaire."), *report and recommendation adopted by*, 2016 WL 160726 (E.D. Tenn. Jan. 13, 2016). Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. §

9

416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Here, the ALJ's assignment of some weight to portions of Dr. Bibby's opinion, and little weight to the assessed social and adaption limitations, is supported by substantial evidence, as the ALJ appropriately detailed how the opinion was inconsistent with the longitudinal record. *See* 20 C.F.R. § 404.1527(c) (directing that an ALJ evaluates a non-treating source opinion by considering the supportability of the opinion). Initially, during his step three assessment, the ALJ found that Plaintiff only had moderate limitations in interacting with others, as well as adapting or managing oneself. [Tr. 20]. The ALJ noted that Plaintiff stated that she gets along "fine" with authority figures in her April 20, 2015 Function Report [*Id.* (citing Tr. 337)], as well as that she interacted within normal social parameters at most office visits and at the hearings [Tr. 20]. When finding that Plaintiff had only moderate limitations in adaption, the ALJ noted that the medical record reflects Plaintiff presented to many office visits with appropriate dress, appearance, and hygiene. [*Id.*].

In the RFC determination, the ALJ stated that Plaintiff "presented with normal signs and findings at several office visits" and detailed treatment and examination notes from March 27, 2015 through August of 2017. [Tr. 25–26]. First, the ALJ noted that during a March 27, 2015 office visit with psychologist D.S. Arulpragasam, Ph.D., Plaintiff was alert and oriented in all spheres, and although her mood was anxious and depressed with congruent affect, her thought processes were logical, sequential, and goal-directed in nature, and her judgment and insight

10

appeared good. [Tr. 25]; *see* [Tr. 480]. The ALJ also detailed Plaintiff's June 11, 2015 C & P examination with Dr. Bibby, including noting, for example, that Plaintiff presented a pleasant and cooperative demeanor throughout the examination, and was alert and fully oriented. [Tr. 25]; *see* [Tr. 733]. Further, the ALJ stated that Plaintiff presented as pleasant and cooperative, and her thought processes were logical and goal-directed during a June 2015 office visit with Dr. Linda Harris. [Tr. 26]; *see* [Tr. 712].[2]

Additionally, the ALJ noted that Plaintiff had worked at the level of substantial gainful activity in only a few of the 10-12 years prior to the alleged onset date, which "suggests [Plaintiff's] lack of recent work activity might be due to reasons other than medical disability." [*Id.*]. The ALJ reviewed Plaintiff's reported daily activities, including noting that she could buy groceries, attend church sporadically, and visit with family, to find that her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence and longitudinal record. [Tr. 25]. Lastly, the ALJ noted that Plaintiff reported going on cruises in the Bahamas after the alleged onset date. [Tr. 26].

The ALJ reviewed Plaintiff's continued treatment for PTSD from the VA in 2016 and 2017, including that "[i]n August 2017, treatment notes state the claimant had missed many of her appointments for medication management and individual psychotherapy over the past few months." [*Id.*]. Ultimately, when discussing the VA's increase of Plaintiff's disability rating to 100% in May 2017, several months after Plaintiff's date last insured, the ALJ found that that this increase, combined with the longitudinal evidence, "supports the conclusion that [Plaintiff's]

---

[2]While the ALJ cited to a June 16, 2015 office visit, it appears that the treatment note stating that Plaintiff presented as pleasant and cooperative occurred on June 22, 2015. *See* [Tr. 712].

11

mental condition was *less severe* as of the *date last insured* than at the time the VA issued its most recent disability adjudication. [Tr. 28].

When reviewing the medical opinion evidence, the ALJ also assigned great weight to the opinion of nonexamining state agency psychologist, Michael Hammonds, Ph.D., who examined the evidence of record at the reconsideration level of the agency's review on September 24, 2015. [Tr. 26]; *see* [Tr. 121]. In relevant part, when assessing Plaintiff social interaction limitations, Dr. Hammonds opined that Plaintiff was moderately limited in the ability to interact appropriately with the general public and the ability to accept instructions and respond appropriately to criticism from supervisors; but that she was not significantly limited in the ability to ask simple questions or request assistance, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. [Tr. 125–26]. Similarly, when assessing Plaintiff's adaption limitations, Dr. Hammonds found that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, but that she was not significantly limited in the ability to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation, or the ability to set realistic goals or make plans independently of others. [Tr. 126].

Ultimately, Dr. Hammonds opined that Plaintiff would be able to maintain attention and concentration for two hours at a time as required to perform simple tasks sufficiently to complete and eight-hour day and a forty-hour week. He determined that she was capable of appropriate social interaction with coworkers and supervisors, but would be best in an environment which did not require ongoing public contact. [Tr. 126]. He further opined that Plaintiff was capable of casual and infrequent contact that would be required to answer questions and provide service that

was not persistent, and that her supervision should be direct and nonconfrontational. [*Id.*]. Additionally, Dr. Hammonds found that in a work environment requiring the completion of simple, repetitive tasks, Plaintiff was able to adapt to routine changes and respond to directions from others; that she may have difficulty adapting to new situations at work, but could adapt to predictable work environments; and that she could attend work regularly, make simple work-related decisions and occupational adjustments, and protect against work-related safety hazards and travel to and from work independently. [*Id.*].

Therefore, substantial evidence supports the ALJ's consideration of Dr. Bibby's opinion, as the ALJ detailed the evidence in the medical record that was inconsistent with the opinion throughout the disability decision. Further, "the ALJ is 'under no special obligation' to provide great detail as to why the opinions of the nonexamining providers 'were more consistent with the overall record' than the examining, but nontreating providers." *Jenkins v. Soc. Sec. Admin.*, No. 3:14-cv-1713, 2017 WL 2692624, at *9 (M.D. Tenn. June 21, 2017) (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (explaining that opinions from one-time consultative examiners are not due any special degree of deference). "[A]n ALJ may credit the views of a nonexamining doctor over those of someone who has examined the claimant where the nonexaminer's opinion is better supported by the objective evidence and more consistent with the record as a whole." *Dixon v. Astrue*, No. 2:11-CV-148, 2012 WL 441194, at *4 (E.D. Tenn. Feb. 10, 2012) (citing *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006)). Here, the ALJ properly afforded great weight to the opinion of the nonexamining state agency psychologist, Dr. Hammonds, and appropriately explained his decision in weighing the respective opinions. *See Norris*, 461 F. App'x at 440 ("While perhaps the ALJ could have provided greater detail, particularly as to why the

nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources.") (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

By reviewing Plaintiff's mental health treatment and her normal signs and findings at several office visits, the ALJ reviewed the supportability of the opinion with the medical record and Plaintiff's subjective allegations. *See Norris*, 461 F. App'x at 469 (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"). Further, the ALJ noted that Dr. Bibby's August 10, 2017 opinion was issued a significant time after Plaintiff's date last insured. *See Thomas v. Comm'r of Soc. Sec.*, No. 2:18-CV-108, 2019 WL 2414675, at *3 (S.D. Ohio June 7, 2019) ("Evidence of a disability obtained after the date last insured is usually unpersuasive.") (citing *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004)).

While Plaintiff claims that Dr. Bibby's opinion was supported by the medical record and her two examinations of Plaintiff, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Therefore, the ALJ's treatment of Dr. Bibby's opinion is supported by

14

substantial evidence, and Plaintiff's assignments of error do not constitute a basis for remand.

### B. ALJ's Treatment of Ms. Miller's Opinion

Plaintiff asserts that the ALJ failed to properly weigh the opinion of her treating mental health counselor, Ms. Miller, under Social Security Ruling 06-3p. [Doc. 14 at 21]. Plaintiff maintains that the ALJ "failed to conduct an appropriate analysis" of the opinion, as it was well-supported by the medical record, including the examinations performed by Dr. Bibby. [*Id.* at 22–23]. Further, Plaintiff claims that the ALJ improperly discounted Ms. Miller's opinion because it was rendered after the date last insured, as "Ms. Miller was speaking to Plaintiff's limitations as they relate back to the relevant period." [*Id.* at 24]. Lastly, Plaintiff asserts that the ALJ improperly found that the opinion discussed the ultimate question of whether Plaintiff was disabled. [*Id.* at 24–25].

Ms. Miller provided an opinion on March 23, 2017, and first stated that she had treated Plaintiff "for a few sessions" for treatment of her PTSD with Anxiety and Depression secondary to the PTSD. [Tr. 902]. Ms. Miller stated that Plaintiff's "experiences have not yet been treated and remain a dominant factor in her ability to function on several levels," including "working in a public setting" and "interacting with other people." [*Id.*]. Additionally, Ms. Miller noted that when Plaintiff is around other people, "she has a heightened sense of vulnerability which contributes to the sense of loss of safety," that she was "hypervigilant and on constant alert, and due to the severe degree of anxiety," Plaintiff had "extreme difficulty focusing on the task at hand as well as being around others." [*Id.*]. Therefore, Ms. Miller opined that she did not believe that Plaintiff was able to work in a productive manner at the present time. [*Id.*].

In the disability decision, the ALJ reviewed Ms. Miller's opinion and afforded it little weight. [Tr. 27]. First, the ALJ noted that Ms. Miller admitted that she had only seen Plaintiff for

15

a few sessions. [*Id.*]. Next, the ALJ detailed that Ms. Miller submitted her opinion long after the date last insured, and, "as such, it has limited probative value." [*Id.*]. The ALJ noted an inconsistency in Ms. Miller's letter, in that she stated that Plaintiff's "mental health issues have not been treated; however, this is inconsistent with [Plaintiff's] long treatment history at the VA for post-traumatic stress disorder." [*Id.*]. Lastly, the ALJ found that the opinion addressed the issue of whether Plaintiff "could work in a productive manner, yet the issue of disability is reserved for the Commissioner alone." [*Id.*].

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902. Social Security Ruling 06-03p governs the opinions of "not acceptable medical sources." 2006 WL 2329939, at *2 (Aug. 9, 2006).[3] Evidence from those who are "not acceptable medical sources" or "other sources," including mental health counselors, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06–03p, 2006 WL 2329939, at *2; *see Cole v. Astrue*, 661 F.3d 931, (6th Cir. 2011) (noting that claimant's treating mental health counselor was an "other source" under 20 C.F.R. § 404.15513(d)(1)).

Therefore, as an "other source," Ms. Miller's opinion was not subject to any special degree of deference. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (stating that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a

---

[3] "SSR 06-03p was rescinded [as to claims filed on or after] March 27, 2017, *see* Notice of Rescission of Social Security Rulings, 82 Fed. Reg. 15263-01 (March 27, 2017), but was in effect at the time of the ALJ's decision, and as such, applies here." *Davis v. Comm'r of Soc. Sec.*, No. 1:16-CV-2446, 2018 WL 1377790, at *7 n.6 (N.D. Ohio Mar. 19, 2018).

physician's opinion because a nurse is not an 'acceptable medical source'"). Interpreting Social Security Ruling 06-03p, the Sixth Circuit has found that "[o]pinions from non–medical sources who have seen the [Plaintiff] in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

The ALJ considered Ms. Miller's status as an "other source," and properly explained the weight assigned to her opinion. Further, the ALJ was not required to assign controlling weight to the opinion, and the ALJ assessed how Ms. Miller's opinion was consistent with the medical record as a whole. The consistency of an opinion with other evidence in the record is one factor that may be considered in evaluating medical opinion evidence from an "other source." *See* SSR 06-03p, 2006 WL 2329939, at *4. In this regard, the ALJ noted that Plaintiff had received mental health treatment from the VA for her PTSD, although Ms. Miller stated that Plaintiff's mental health issues had not been treated. The ALJ also noted Plaintiff's lack of an extensive treatment history with Ms. Miller, as she stated that she had only seen Plaintiff for a few sessions of therapy. *See, e.g.*, *Clemons v. Comm'r of Soc. Sec.*, No. 1:18-CV-119, 2019 WL 668018, at *11 (S.D. Ohio Feb. 19, 2019) ("Because Ms. Stroup is not an acceptable medical source, the ALJ was not bound to weigh her opinion in accordance with the regulatory factors. The ALJ complied with the regulations by considering Ms. Stroup's opinion and discounting it for valid reasons which are substantially supported by the evidence. Ms. Stroup saw plaintiff five or so times over a period of less than two months before issuing her assessment of marked and extreme mental limitations, which were not consistent with Ms. Stroup's mental status exam findings."), *report and recommendation adopted by*, 2019 WL 1099756 (S.D. Ohio Mar. 8, 2019).

Further, the ALJ properly considered that Ms. Miller's opinion was provided after Plaintiff's date last insured. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004). Moreover, "post-expiration evidence must relate back to claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) (citing *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205–06 (6th Cir. 1990)). Here, Ms. Miller's opinion is dated from several months after Plaintiff's date last insured, and while it discusses Plaintiff's PTSD, the opinion does not state that she treated Plaintiff prior to the date last insured or covers the period prior to this date.

Lastly, the ALJ properly found that Ms. Miller's statement that Plaintiff could not work in a productive manner was on an issue reserved for the Commissioner. Opinions on issues reserved to the Commissioner, such as whether a claimant is "disabled," are not considered medical opinions "because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)(1). Thus, opinions on issues reserved to the Commissioner, regardless of the opinion's source, "will not be given any special significance . . . ." *Id.* Here, the ALJ considered Ms. Miller's opinion, and did not discredit the opinion solely because a portion of the opinion addressed an issue of disability reserved for the Commissioner.

Ultimately, the ALJ had broad deference in his consideration of Ms. Miller's opinion, as "[t]he opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248–49 (6th Cir. 2015) (internal citations omitted). Accordingly, the Court finds that the ALJ appropriately considered Ms. Miller's opinion and properly stated his reasons for assigning it little weight. *See Hill v.*

*Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("Thus, the ALJ properly considered the [therapist's] opinion as an 'other source' and explained her reasons for giving it 'little to no weight.'").

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge